UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| TIMOTHY B. NADEAU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10-cv-00249-DBH |
| | ) | |
| MAINE DEPARTMENT OF CORRECTIONS, | ) | |
| et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION**

Timothy Nadeau, a state court prisoner, has sued two nurses employed by Correctional

Medical Services and a corrections officer at the Maine Correctional Center.  He has also named

Martin Magnusson, the Commissioner of the Department of Corrections, as a defendant.

Nadeau's initial pleadings were confusing, but following extending an opportunity to amend,

after initial screening and this court's adoption of my recommendation concerning the

sufficiency of the amended complaint, the four individuals identified above remain the sole

defendants in this action.  Two of those defendants, Eric Thompson, the corrections officer, and

Martin Magnusson, the Commissioner, have moved for summary judgment.

The defendants filed a twenty-one paragraph statement of material fact.  Nadeau

responded to the motion for summary judgment, but he did not file a response to the statement of

fact in compliance with District of Maine Local Rule 56 (c) and the defendants' statements are

therefore deemed admitted under Local Rule 56(f).  Nevertheless, I have considered the

documents submitted by Nadeau in opposition to the summary judgment motion and I have

included them within the statement of fact set forth below.  I now recommend that the court grant

Thompson's motion for the reasons set forth in his motion and grant Magnusson's motion for the

reasons set forth in the recommended decision.[1]

## Summary Judgment Standard

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law.'"

United States v. Union Bank For Sav. & Inv. (Jordan), 487 F.3d 8, 17 (1st Cir. 2007) (quoting

Federal Rule of Civil Procedure 56(c)).   I draw all reasonable inferences in favor of Nadeau, but

where he bears the burden of proof, he "'must present definite, competent evidence' from which a

reasonable jury could find in [his] favor." Id. (quoting United States v. One Parcel of Real Prop.,

960 F.2d 200, 204 (1st Cir. 1992)).  Nadeau has presented a smattering of documents in defense

of the motion for summary judgment but did not technically comply with Local Rule 56.

However, this court,

> may not automatically grant a motion for summary judgment simply because the
> opposing party failed to comply with a local rule requiring a response within a certain
> number of days.  Rather, the court must determine whether summary judgment is
> "appropriate," which means that it must assure itself that the moving party's submission
> shows that "there is no genuine issue as to any material fact and that the moving party is
> entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Advisory
> Committee Note to Rule 56 ("Where the evidentiary matter in support of the motion does
> not establish the absence of a genuine issue, summary judgment must be denied even if
> no opposing evidentiary matter is presented.").

NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7 -8 (1st Cir. 2002).

---

[1]    The defendants' joint motion raises only one issue –failure to exhaust the administrative grievance
procedure under the PLRA.  As to defendant Magnusson, I am satisfied that the factual record and the pleadings, as
currently postured, warrants entry of judgment in his favor as a matter of law regardless of whether there is a dispute
of fact as to whether Nadeau attempted to fully exhaust the available grievance procedures.

**Statement of Fact**

Timothy Nadeau is currently an inmate at the Maine State Prison. (See Doc. No. 21-1.) He originally entered the Maine Correctional Center (hereinafter "MCC") on or about February 11, 2010. (See Compl. ¶ 3, Doc. No. 1.) Nadeau remained incarcerated at MCC during the relevant events alleged in his complaint. (See Am. Compl. ¶ 1, Doc. No. 9.)

Captain Brian Libby is the Grievance Review Officer at MCC and has been since September of 2003. (Libby Aff. ¶ 1.) As a result, he is familiar with the current Department of Corrections grievance policies. (Id. ¶ 2.) All grievances, except those regarding medical and mental health care, are handled in accordance with Department of Corrections Policy 29.1, Grievance Process, General. (Id. ¶ 3.) Grievances regarding medical and mental health care are handled in accordance with Department of Corrections Policy, 29.2. (Id. ¶ 4.) Both Policy 29.1 and Policy 29.2 have been in effect since January 13, 2003. (Id. ¶¶ 5, 6 & attached documents.) Both policies provide for a formal grievance process that has three levels of review. The third level of review, review by the Commissioner of Corrections, is the final administrative level of review. (Id. ¶¶ 6,7 & attached documents.) Captain Libby acts as the Grievance Review Officer for all grievances at the Maine Correctional Center, including grievances regarding medical and mental health care. (Id. ¶ 8.) In his position, Captain Libby acts as a custodian of the records of all grievances filed at MCC. (Id. ¶ 9.) Captain Libby is also custodian of the grievances forwarded to the Commissioner's level and the responses to those grievances. (Id. ¶ 10.) Captain Libby conducted a diligent search of the records of grievances that have been filed at MCC from February of 2010 to the present. (Id. ¶ 11. )

The plaintiff, Timothy Nadeau, filed a total of four grievances during this time frame: Grievance Nos. 2010-MCC-29; 2010 MCC-31; 2010-MCC-47; and, 2010-MCC-48. (Id. ¶¶ 12,

3

18 & attached documents.)  Both Grievance Nos. 2010-MCC-29 and 2010-MCC-31 were

regarding a medication issue on May 31, 2010, and were resolved at the second level with the

agreement of Nadeau. (Id. ¶¶ 13,18 & attached documents.)  Nadeau voluntarily withdrew

Grievance Nos. 2010-MCC-29 and 2010-MCC-31 and did not appeal to the Commissioner. (Id.

¶¶ 14, 18 & attached documents.)

Nadeau filed two more grievances regarding a disciplinary incident involving an

altercation with another inmate on September 9, 2010, Grievance Nos. 2010-MCC-47 and 2010-

MCC-48. (Id. ¶ ¶¶ 15, 18 & attached documents.)  These grievances were denied at the first and

second level. (Id. ¶¶ 16, 18 & attached documents.)  These grievances have been forwarded to

the Commissioner for a third level grievance appeal and are still pending. (Id. ¶ 17.)  Timothy

Nadeau did not file any other grievances while at the Maine Correctional Center. (Id. ¶¶18,19 &

attached documents.)  Timothy Nadeau did not file a formal grievance regarding the allegations

in the complaint or amended complaint in the instant case. [2]  (Id. ¶ ¶ 18, 20 & attached

documents.)

Nadeau's responsive exhibits include a memo from Ken Topel, Heath Service

Administrator, which reflects that Nadeau had communicated to him his dissatisfaction with the

conduct of medical staff in conjunction with the March 16, 2010, incident.  The memo from

Topel, if accepted as a response to a medical grievance, does not contain any indication that

Corrections Officer Eric Thompson was the subject of the underlying grievance.

---

[2]     As I indicated in my prior Recommended Decision, (Doc. No. 20), Thompson, along with the two nurses,
are sued in connection with physical injury allegedly inflicted when these three individuals forcibly moved Nadeau
from the dining area in A pod, Windham, to his cell by pulling him onto a mattress.  This incident allegedly
occurred on March 16, 2010. (Complaint, Doc. No. 1, ¶ 11(1).  I also acknowledged that Nadeau had "arguably"
stated a claim against Magnusson for knowingly allowing overcrowded conditions and depriving inmates, including
Nadeau, of adequate shelter and medical services.  (Rec. Dec., Doc. 20, Page ID No. 64).

Nadeau's second exhibit is a memo he received on June 29, 2010, (following commencement of this lawsuit) from the superintendent of the Maine Correctional Center regarding a letter that Nadeau had sent "during the last few weeks" to Commissioner Magnusson. (Doc. 30-2, Page ID No. 170). In the memo the superintendent acknowledged that Nadeau had complained to the Commissioner about the overcrowding at the prison and the medical care he had received. The response to Nadeau's letter suggests that the correctional supervisors had investigated his complaint and felt that appropriate steps had been taken.

The third exhibit submitted by Nadeau was another memo to him from the superintendent, also dated June 29, 2010. In this memo the superintendent references a letter that Nadeau wrote to a Mr. Lancaster on June 20, 2010. The first issue in this memo related to Nadeau's complaint about the lack of receipts for the grievance forms used by the prison and the memo indicates that the department's intent was to resolve this issue as Nadeau had suggested, hardly the stuff of a constitutional violation. The second issue pertained to Nadeau's release plan and that was likewise addressed in an informal manner. Neither of these issues has anything to do with this lawsuit.

The fourth and final exhibit submitted by Nadeau is a note dated July 10, 2010, pertaining to a grievance that Nadeau filed concerning legal materials from the library. Nadeau indicates that he has two more such receipts for grievances in his property and that Brian Libby's affidavit did not reflect anything about the three grievances for which he has receipts. I assume that this "receipt" system involves grievances post-June 29, 2010, because the superintendent suggested to Nadeau in the memo about his complaint about grievance forms that he obtain a receipt for the grievances he filed until such time as the form may be adjusted to create a

duplicate copy.   Furthermore the receipt is dated July 10, 2010, and obviously has nothing to do with the March 16 incident.

Finally, Nadeau's memorandum in opposition to the motion is in the form of a declaration under oath.  (Doc. No. 30.)   According to Nadeau's sworn declaration he tried to file a grievance with Libby concerning the March 16 incident, but Libby told him he had to follow the medical grievance procedure.  According to Nadeau he met with Topel about the incident. Nadeau believed that based on the information given him by Libby he had properly complied with the grievance procedure vis-à-vis the March 16 incident.   Nadeau also affirms under oath that he addressed the overcrowding and inadequate medical care grievance by communicating directly by letter with Martin Magnusson and Bob Lancaster, as evidenced by the responses he received from the superintendent of the facility, included among his exhibits.  He says he took these steps because he filed grievances and more than twenty days had elapsed without a response.  According to Nadeau, Brian Libby did not file or process his grievances.

**DISCUSSION**

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). See generally Jones v. Bock, 549 U.S. 199, 216 (2007); see also  Cruz Berrios v. Gonzalez-Rosario, __ F.3d __, __, 2010 WL 5116617, 2 (1ˢᵗ Cir. Dec. 16, 2010) (remanding the case to the district court for additional fact-finding as to whether the exhaustion requirement bars the suit).

*Officer Eric Thompson*

There is really no factual dispute about Nadeau's use of the grievance procedure as it relates to Thompson.  He agrees that he never filed a formal grievance with Libby, but he says

that was because Libby told him he had to use the medical grievance procedure.  Thus, within a

few days of the March 16 incident Nadeau was on notice that there were formal grievance

policies and that the process for medical grievances differed from the process for general

grievances.  A review of Policy 29.2, Grievance Process, Medical and Mental Health Care,

Procedure B. Filing Grievances, explains that contacting Ken Topel, the medical supervisor, to

attempt an informal resolution is simply a necessary first step.  The actual policy for filing

formal grievances mirrors the grievance policy for other complaints.  (See Doc. No. 24-3 at 4.)

Based on the summary judgment record, Nadeau knew, or should have known because he had

been placed on notice, that a formal grievance procedure existed regarding complaints such as

his concerning the events of March 16.  Nadeau concedes that he did nothing more than contact

Ken Topel about the incident.  Thus, he clearly never filed a formal grievance against Eric

Thompson and Thompson is entitled to judgment as a matter of law.  See Cruz Berrios, 2010 WL

5116617 at 2.

*Martin Magnusson*

       The summary judgment record pertaining to Nadeau's grievances expressed to

Magnusson concerning the overcrowding and the quality of medical care is a bit more opaque.

Nadeau alleges that he filed grievances concerning these issues with Libby but that more than

twenty days went by without a response.  Therefore, he took matters into his own hands and

wrote a letter directly to the commissioner.  It appears from this record that Magnusson received

that letter --  probably in early June 2010 --  and directed Scott Burnheimer, the superintendent of

the facility to respond.  Thus, even if there is a factual dispute about Nadeau's use of the

*available* grievance procedure, it is clear that Magnusson knew that Nadeau was complaining

about overcrowding and the general quality of the medical care.  It is clear from Nadeau's

pleadings that his claim against Magnusson, at best, is one framed by the Eighth Amendment cruel and unusual punishment inquiry. See generally Farmer v. Brennan, 511 U.S. 825 (1994).

Nadeau's own exhibits establish that Magnusson is entitled to judgment as a matter of law. It is clear from the document submitted by Nadeau, when read in conjunction with his original complaint, that the time he spent sleeping on a mattress on the floor in APod was relatively brief. His complaint was that he did not like being housed in MPU which was a close custody unit. A decision regarding housing with which the prisoner disagrees is not the same as "deliberate indifference" to the prisoner's basic needs. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987). The mere fact that Nadeau slept on a mattress on the floor for a few nights and then was housed in a unit not to his liking does not equate with cruel and unusual punishment. In Farmer the Court clarified that the Eighth Amendment has an objective and a subjective component. See Farmer, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious,'" id. (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)); that is, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities,'" id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, the prison official must have a "'sufficiently culpable state of mind'" id. (quoting Wilson, 501 U.S. at 297), and in cases such as this one "that state of mind is one of 'deliberate indifference' to inmate health or safety," id. (quoting Wilson, 501 U.S. at 302-03).

Applying those legal standards to Magnusson's conduct, as Nadeau has now presented it, it is clear that Magnusson was not 'deliberately indifferent' to any need that was sufficiently serious to amount to cruel and unusual punishment. The overcrowding and housing dispute as

8

articulated by Nadeau is simply not sufficiently serious to fall within the Eighth Amendment's ambit. Objectively speaking, Nadeau's time on the mattress on the floor was relatively brief and he was moved to a bed as soon as one became available. The bed was located in a housing unit that did not appeal to Nadeau, but that sort of dispute does not equate with deliberate indifference to a serious deprivation of life's necessities. Nadeau was housed and fed adequately. Magnusson is not alleged to have done anything that would rise to the level of a constitutional violation concerning Nadeau's receipt of life's basic necessities.

In terms of medical needs, apparently Nadeau does have a serious preexisting back condition, but, as I indicated in my earlier recommended decision, the prison medical department saw him on numerous occasions and attempted to respond to his concerns. (Burnheimer's Mem., Doc. No. 30-2.) This memo, submitted by Nadeau, indicates that Magnusson knew that Nadeau had been seen by medical personnel on numerous occasions and was receiving medications for pain relief. There is nothing in these exhibits to suggest that Magnusson knew of, or was involved in any way with, the events of March 16. Thus, Nadeau has not sufficiently alleged Magnusson's deliberate indifference, even though he has been given abundant opportunity to do so. As I indicated in my earlier order regarding service (Doc. No. 11), Nadeau has not alleged an underlying constitutional violation regarding medical care, other than in context of the physical pain and injury in connection with the March 16 incident. Therefore, Magnusson can hardly have been deliberately indifferent to serious medical needs.

## CONCLUSION

Based upon the foregoing, I recommend that the court grant summary judgment to both Thompson and Magnusson.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

December 29, 2010